THE STATE ex rel. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.

In Banc, June 29, 1915.

RAILROAD: Separate Demurrage and Team Track Storage Charges. A railroad company is entitled to make but one charge for demurrage and for team track storage. Having made the maximum demurrage charge allowed by sections 3111, 3112 and 3155, Revised Statutes 1909, it cannot make a further track storage charge for the use of its track space occupied by the cars in the yards during the same time for which the demurrage charges are imposed and collected. Track storage is not a distinct and separate service from the service for which demurrage is charged. To permit a track storage charge and what the statute denominates "demurrage" would be to permit two charges for a single service.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*S. W. Moore, F. H. Moore* and *J. M. Souby* for appellant.

(1)  The prior provisions of the statutes relating to demurrage and fixing a maximum charge therefor were repealed by the Public Service Commission Act. R. S. 1909, secs. 3108-3118; Public Service Commission Act, Laws 1913, p. 556; 36 Cyc. 1077, 1097; Board of Trade of Kansas City v. Railroad, 1 Mo. P. S. C. 600; State ex rel. v. Shields, 230 Mo. 91; State v. Crane, 202 Mo. 54.  (2)  The team track storage charges under consideration are not embraced within the term "demurrage" as used in the Missouri statutes fixing a maximum charge of one dollar per car per day therefor.  2 Hutchinson, Carriers (3 Ed.), sec. 832; Dixon v. Railroad, 110 Ga. 173; Murphy Bros. v. Railroad, 21 I. C. C. 176; Hay Exchange v. Railroad, 14 I. C. C. 178. (3) It was the duty of the commission in this case to find whether or not the proposed charges were reasonable and to permit their establishment if found reasonable, even though it was of the opinion that the statute included such charges as these in the maximum fixed for demurrage.  Public Service Commission Act, Laws 1913, p. 556.

*William G. Busby* for respondent.

WOODSON, C. J.—This is an appeal taken by the appellant from a judgment of the circuit court of Cole county, affirming an order of the respondent, the Public Service Commission, setting aside and cancelling a certain schedule of prices filed by the former with the latter to become effective October 26, 1913, fixing charges to be collected for what the appellant termed "Team Track Storage Charges at Kansas City, Missouri."

There are no pleadings in the case.

The facts are few and not disputed, and are as follows:

The appellant, a railway company, engaged in transporting freight and passengers in and out of Kansas City, to various other points in the State and United States, did, on September 25, 1913, file with the respondent a certain schedule showing certain tariffs it proposed to establish and collect from all shippers of car lots of freight into or out of Kansas City, over its road, as team track storage charges, on cars from and after October 26, 1913.

The schedule was in the following words and figures:

"Team Track Storage Charges At Kansas City, Mo.

· "Cars held for loading, unloading, inspection, reconsignment or switching order, on team tracks within the switching limits of Kansas City, Missouri, will be subject to track storage charges as follows:

"Team Track Storage Charges (Sundays and holidays excepted).

"1. No charge will be made for the first forty-eight hours after car is placed on team track. (Time to be computed from first 7:00 a. m. after placement, and after the day on which notice has been sent).

"2. For next succeeding two days the charge will be one dollar per car per day or fraction thereof.

"3. For each succeeding day the charge will be two dollars per car per day or fraction thereof.

"4. The foregoing track storage charges are in addition to the regular car demurrage charges lawfully on file with the Interstate Commerce Commission and subject to the rules and provisions thereof relating to serving of notices and exemptions for detention through causes named therein. [Rule 8 of the National Car Demurrage Rules.]"

265Mo.26

Upon the filing of this schedule the commission made an order suspending the same "pending," as stated in the order, "an investigation of the reasonableness of such charges, to be made by it on its own motion, for the reason that the charges were discriminatory, unreasonable and an innovation."

This order was properly served upon the appellant, and a day was set by the commission for the appellant to appear and show cause, if any it had, why the order theretofore made suspending said schedule, should not be made perpetual.

Upon the day set for the hearing the appellant appeared before the commission and presented its claim of authority to put the schedule into force, and thereafter the respondent overruled appellant's contention and made permanent the order theretofore made suspending the schedule of the proposed charges.

In due time the appellant filed its motion for a rehearing before the commission, which was very lengthy —the 25th ground thereof being as follows:

"That the commission had erroneously decided that it had no power to establish a rate in excess of the statutory rate, notwithstanding the statutory rate is unreasonably low and although the commission found that the proposed charges were reasonable."

Rehearing was denied by the commission.

The opinion of the commission is reported in 1 Mo. P. S. C. 594. [In re Team Track Storage.]

Upon the overruling of the motion for a rehearing, the appellant carried the case to the circuit court by writ of *certiorari,* and, as previously stated, the circuit court sustained the action of the commission in quashing the schedule, and the railway company duly appealed the cause to this court.

Whatever additional facts may be necessary to mention in disposing of the case, will be referred to in connection with the points discussed.

There are many legal propositions presented in this case, and ably discussed by learned counsel for the respective parties—some of which are of vast im-

**Track Storage Charges: Demurrage.**

portance to common carriers of the country and to the public at large; and after a careful considera-tion of the entire record of the case I am fully convinced that a number of the most important propositions are not properly involved in this litigation, and that whatever might be said at this time regarding those matters would, in the very nature of the case, be *obiter,* binding upon no one, and befog the rights of all, should further litiga-tion become necessary to adjudge the rights of all simil-arly situated.

For the reason stated we will confine our observa-tions to the single question propounded by the commis-sion to the respondent, viz: By what authority do you propose to put in force the schedule of charges filed?

Without unnecessary preliminary statements, we will directly approach the controversy in hand, and dispose of it in the shortest possible manner, in order not to trespass upon the territory of the other proposi-tions presented.

The position of the commission was that the service for which the appellant desired to make the ''team track storage charge'' was a part of and included in the service for which it was then charging and collect-ing ''demurrage'' under the provisions of sections 3108 to 3118 and 3155, Revised Statues 1909, and that to permit this additional charge would simply *be to authorize the company to increase the maximum de-murrage charges provided for by said statutes for the performance of the same service for which, as previ-ously stated, it is already collecting demurrage charges;* while upon the other hand the appellant takes the posi-tion that the ''track storage charges'' are proposed to be made for a service rendered, which is separate and

distinct from that for which the demurrage charges are made. That is to say the "track storage charges" *are for the use of the railroad track space occupied by the cars in the yards during the same time for which the demurrage charges are imposed and collected.*

The sections of the statutes before mentioned provide that railway companies shall furnish freight cars for shippers, how the freight shall be received and forwarded, the giving of notice to the consignee of the arrival of the freight at its destination, the mode or manner of delivering freight, team tracks, the time for loading and unloading freight, time for unloading cars after notice given to consignees of the arrival of the cars, storage charges on goods remaining in depots over forty-eight hours, suits, damages and attorney's fees, rules and regulations, duties of the railroad commissioners, schedules of storage charges and the time and place for unloading cars, etc.

The first question to be determined is, what are team tracks and demurrage charges, within the meaning of said statutes?

In so far as section 3111 is material, it reads as follows:

"Railroad companies shall deliver freight at their depots or warehouses, or in case of shipment for track delivery, shall place loaded cars at an accessible place for unloading within twenty-four hours after arrival, computing from seven o'clock a. m. of the day following arrival of the same, Sundays and holidays excepted; except that carload shipments for track delivery at local stations having not more than one team track shall be placed at an accessible point for unloading within twelve hours after the arrival of said car. The railroad company shall forfeit and pay to the shipper or consignee one dollar per car per day for each day or fraction such delivery is delayed and all actual damages sustained thereby."

From the language of this statute it is observed that it is made the duty of the respondent to furnish team tracks for the use of consignees of freight, where the freight is not to be unloaded at a depot or warehouse.

Section 3112, regarding the same subject, reads as follows:

"Shippers or consignees on whose order a car or cars of less than sixty thousand pounds capacity have been placed for loading or unloading, shall have forty-eight hours for loading or unloading such cars, and seventy-two hours for loading or unloading those of sixty thousand pounds or greater capacity, computing time from first seven o'clock a. m. after such car or cars have been placed, subject to such order, and thereafter a demurrage charge of not more than one dollar per car per day, or fraction of a day, may be assessed and collected on all such cars, respectively, as have not been tendered to the railroad company, with shipping instructions for loaded cars, within said respective periods of forty-eight and seventy-two hours of free time: *Provided,* however, should such shipper or consignee fail to begin loading or unloading within forty-eight hours after the expiration of free time, the railroad company may consider the empty car or cars released, and may assess and collect on every car, loaded or empty, one dollar, covering the demurrage then due; and railroad companies shall not be compelled to furnish cars for future shipments to persons in default as to the payment of the demurrage charges herein provided for until such demurrage charges shall have been paid; and *provided further,* that when, in filling orders for cars, or in the transportation or delivery of freight, cars are bunched in excess of the capacity of the shipper to load, as indicated in his application or of the consignee to unload, such shipper or consignee shall have separate and distinct periods of free time in which to load or unload, as the case may be, the

car or cars specified in each separate application, or in each bill of lading or way bill of different dates."

This statute provides that the shipper shall pay to the railway company a demurrage charge of not more than one dollar per day, or a fractional part thereof, for his delay in unloading the freight from the car beyond forty-eight hours after the car has been placed upon the track for unloading, etc.

This statute must be read in connection with section 3111 and when so read it is seen that the delivery of the car to the shipper or to the person to whom the shipment was made contemplates the performance of two services by the company, namely, (1) to *move* the car which contains the freight, and (2) to furnish a team track, etc., upon which the car must be placed for unloading, but if the company have but one team track, then it may place the car at some other convenient point for unloading.

For the performance of these two services the statutes quoted plainly provide that the company may charge a demurrage of one dollar per day or fraction thereof, after the expiration of forty-eight hours on all cars of less than 60,000 pounds capacity, and after the expiration of seventy-two hours on all cars having a greater capacity.

Section 3155 is to the same effect. It relates to grain only, and provides that the cars shall be put in place on the track, and that the consignee shall have forty-eight hours free of expense, after notice of the placing of the car, in which to remove the grain from the cars.

Now, by reading the schedule of rates filed by the respondent with the commission, it will be seen that they purport to be in compensation for the use of the track upon which the car stands, and cover the same period of time for which the demurrage is assessed and collected.

It seems to me that the language of these statutes is so plain and unambiguous that there is no room for doubt as to their meaning. In express terms they provide for the railroad company to *place the car upon the team track,* and that if not unloaded within the time stated, then the company might collect a demurrage of one dollar per day, until unloaded.

There is no room left for construction, for the statutes mention both the car and the track upon which the car is to be placed, and authorizes a charge of one dollar per day for both, called the demurrage.

But suppose the statute did not mention the track at all, as is true in section 3111, where the company has but one team track.

In that case the statute provides that the company shall place the car "at an accessible point for unloading within twelve hours after the arrival of said car." While not expressed, yet the clear meaning of the statute in such cases is that the company and not the consignee of the freight must furnish said place. As a rule the consignee has no place of his own upon which to place a car, and even if he had, he would have no right to move a car from the company's track to his private property. So the conclusion is irresistible that it was the intention of the legislature to require the company to furnish the car and the track, and to place the car upon the track for which it is entitled to charge a demurrage after a time stated; and that is true whether the track was mentioned or not, for the reason that cars are designed to and do move and stand upon tracks when in use, and nowhere else.

The track upon which the car stands while being unloaded is just as much a part of the service furnished by the company in unloading it as are its tracks extending across the country a part of the service it furnishes for the public in the transportation of freight and passengers from one point to another; and a railway company would have no more authority to charge

an extra cent per mile over and above the maximum passenger rates for the use of the track in transporting passengers from one place to another than it has to charge an extra sum over and above the maximum de-murrage for the use of the track upon which the car stands, while it is being unloaded.

It might as well be said that where one person rents a house to another for a stated rent, thereafter the landlord can collect rent for the ground upon which the house stands.

No court would listen to such a proposition for a moment, for the reason that the house could not be used without the ground upon which it stands; nor can a car be unloaded without the use of the track upon which the company has placed it, and the demurrage of the one covers the use of both, just as the rent of the house covers the use of the land upon which it stands.

It follows from these observations that the respondent is not entitled to collect the charges mentioned in the schedule filed by it with the Public Service Commission.

That was the only proposition presented by the respondent to the commission, and that was the only matter the latter denied the former, and for that reason no other question will be discussed or decided.

Finding no error in the record, the judgment is affirmed.

All concur.