ANDREW MELLON, DIRECTOR GENERAL OF RAILROADS, APPELLANT, v. STOCKTON & LAMPKIN, PARTNERS. RESPONDENTS.—35 S. W. (2d) 612.

Kansas City Court of Appeals. February 16, 1931.

*J. F. Green*, *W. E. Suddath* and *Grover, Tipton & Graves* for appellant.

*M. D. Aber* for respondent.

BOYER, C.—This suit was instituted to recover an alleged balance of $218.74 claimed to be due from defendants for freight charges on certain intrastate shipments of coal. The shipments were made in the year 1918, while the railroads were being operated by the government. The name of the present plaintiff has been substituted for that of his predecessors in office who instituted and prosecuted the suit. The case was tried upon an agreed statement of facts and the result was a judgment for defendants. Plaintiff duly appealed to this court. The case was transferred to the Supreme Court on the supposed ground that a constitutional question was involved. The case has been retransferred to this court for disposition of the questions raised on appeal, after a finding and conclusion by the Supreme Court that the contention of defendants does not involve a construction of any constitutional provision, but merely involves statutory construction and the question as to whether a given statute is applicable to the facts. The opinion of the Supreme Court is reported in 30 S. W. (2d) 974, to which reference is made for the substance of the agreed statement of facts, a portion of the answer, applicable statutes, and the construction heretofore placed upon Section 10444, Revised Statutes 1919, prohibiting discrimination in freight rates.

For convenience a few of the admitted facts will be restated. Defendants were engaged in the business of selling coal at retail in Warrensburg, Missouri. Various shipments of coal were made to them from the towns of Myrick and Wellington, both in the State of Missouri, to Warrensburg, Missouri, over the Missouri Pacific Railroad then being under control of and operated by the United States government through its Director General of Railroads. The lawful tariff rate which should have been charged and collected upon said shipments was $1.40 per ton, but plaintiff charged and defendants paid only $1.10 per ton, and the amount which plaintiff should have, if entitled to recover, is the sum of $218.74. It is agreed that at the times in question the United States was at war with the German Empire, and as a war measure took over the operation of the railroads and also assumed control of the fuel supply of the country; that the railroads were operated by the Director General of

Railroads and the fuel supply was controlled by a United States Fuel Administrator; that the railroad administrator informed the fuel administrator that $1.10 was the correct and proper freight rate to be charged for the shipments of said coal; that the fuel administrator fixed the price which defendants should pay for said coal at $3.80 per ton at the mines, required them to pay $1.10 per ton freight, allowed defendants $1.50 per ton for handling the coal, and required them to sell it for $6.40 per ton, which price was fixed under the belief that $1.10 per ton was the lawful freight rate.

Defendants contend that under the facts and circumstances plaintiff is estopped and precluded from maintaining suit even though the legal rate for such shipments was at the time $1.40 per ton; and contend that the provisions of our statute relating to railroads and which prohibit common carriers to charge or receive for transportation of property a greater or less or different rate than that provided by law have no application to the facts in this case. Plaintiff contends that the provisions of the Federal and State statutes in effect at the time require the collection of the legal tariff, and that the principle of estoppel cannot apply.

In the Act of Congress providing for the operation of transportation systems while under federal control there is contained this provision:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal Laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President." [Sec. 10, chap. 25, vol. 40, United States Statutes at Large, 451, 456.]

Sec. 10444, Revised Statutes 1919, provides:

"No common carrier subject to the provisions of this chapter shall after the taking effect of this chapter engage or participate in the transportation of passengers or property, between points within this State, until its schedules of rates, fares and charges shall have been filed and published in accordance with the provisions of this chaper. . . . No common carrier shall charge, demand, collect or receive a greater or less or different compensation for transportation of passengers or property, or for any service in connection therewith, than the rates, fares and charges applicable to such transportation as specified in its schedules filed and in effect at the time; nor shall any such carrier refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property except such as are regularly and uniformly extended to all persons and corporations under like circumstances."

This statute has attained a fixed and definite construction indicated by the Supreme Court in the disposition of this case to the effect "that a carrier cannot, by contract or otherwise, by estoppel or waiver, directly or indirectly, increase or decrease the duly established freight rates, and that the shipper must make good any deficiency not collected regardless of the cause."

By Section 10 of the Federal Control Act above mentioned the State statute is in terms rendered applicable to carriers while under Federal control unless inconsistent with some other act or with any order of the President. No inconsistency has been indicated to us and no reason assigned by respondent as to why Section 10444, Revised Statutes 1919, does not apply to the facts in this case. We hold that it does apply, and adhere to the construction placed upon its provisions heretofore indicated. Estoppel is not and cannot be operative against the right and duty of the carrier to collect the total amount due under the legal tariff rate. [Mellon v. Stockton & Lampkin, 30 S. W. (2d) 974, 975, and cases cited.]

When the tariff rates of a carrier are once legally established and promulgated the shipper and all parties, in legal contemplation, have notice of the cost of carriage and of the law prohibiting discrimination under any guise or by any device. [Texas & Pacific Railway Co. v. Cisco Oil Mill, 204 U. S. 449, 27 Sup. Ct. Rep. 358; Railway Co. v. Stone Co., 169 Mo. App. 122.] There is no reason apparent why the same rule of law covering interstate shipments should not apply to intrastate shipments as well, and it has been so ruled. In the case of St. Louis Southwestern Railway Co. v. Painton, 275 S. W. 55, 57, it is said:

"Following the reasoning in Bush v. Miller, 205 Mo. App. 38, 216 S. W. 989, and Bush v. Keystone Driller Co., 199 Mo. App. 152, 199 S. W. 597, though they deal with interstate rates, we rule that plaintiff and defendant could not contract for an intrastate rate different to that contained in the tariff filed with the Public Service Commission and published according to law. One of the chief evils sought to be remedied by the Public Service Act, so far as it pertains to railroad rates, was the abolition and prevention of favoritism and discrimination, and we fully concur in the suggestion in plaintiff's brief that the reasoning followed by the Federal courts, dealing with interstate rates, is applicable to intrastate rates in this State."

An almost identical situation was presented in the case of Davis, Director General of Railroads v. Moody, 261 S. W. 1101. The case involved an intrastate shipment in Kentucky, wherein, by mistake, the agent of the Director General collected less than the legal tariff rate. Practically the same plea was made by defendant as that made in the instant case. It was held that to permit the defense of estoppel would be only another way of evading the provisions of the Constitution and statutes of the State and would be an aid to the practice

of discrimination rather than a prevention of it as required by law. It was further held, in effect, that upon proof of the legal rate and the difference between it and the rate actually charged, the court should have given a peremptory instruction to find for the plaintiff.

Defendants make bitter complaint of the hardship and injustice which would result to them if required to pay the full amount of the legal rate under the facts in evidence. We cannot translate sympathy to mean law or permit the one to supplant the other. The law of this case is written and obedience is required without evasion of jot or title.

From the agreed statement of facts it would appear that defendants had a claim against the carrier on account of shortage in coal and on account of the payment of freight on tonnage not received. Defendants did not plead a counterclaim and if they had it does not appear that such claim could be brought forward in this proceeding. Bush v. Keystone Driller Co., 199 S. W. 597, 599 and cases cited.

We find and hold in the case at bar that the conclusion and judgment of the learned trial court in denying the plaintiff the right of recovery was contrary to law, and to permit said judgment to stand would be to ignore and set at naught the declared law of the State. Upon the agreed statement of facts in this case plaintiff was entitled to judgment. It results that the judgment of the trial court should be reversed and the case remanded with direction to enter judgment for plaintiff in the sum of $218.74. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the case remanded with direction to enter judgment for plaintiff. All concur, except *Trimble, P. J.,* absent.