## OCTOBER, 1939.

H. S. SMITH, RESPONDENT, v. GUY A. THOMPSON, TRUSTEE OF THE MISSOURI PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLANT.—142 S. W. (2d) 70.

Springfield Court of Appeals. February 15, 1940.

Rehearing denied July, 1940.

*Spradling & Strom* for appellant.

*Randolph H. Weber* for respondent.

*Thomas J. Cole,* of Counsel.

TATLOW, P. J.—On the 26th day of July, 1938, respondent loaded, at Fisk, Missouri, a carload of watermelons, and consigned them to himself at St. Louis, Missouri. The car of melons arrived in St. Louis on July 27, 1938, and was inspected about eight o'clock A. M., on the same day.

According to the tariff rate, the freight on the watermelons from Fisk, Missouri, to St. Louis, Missouri, was 14c per 100 pounds, but the agent at Fisk overlooking the fact that there had been a 5 per cent increase, quoted respondent a rate of 13½c per 100 pounds. The freight was not paid at Fisk but was paid at St. Louis, and respondent was required to pay freight at the rate of 14c per 100 pounds instead of 13½c per 100 pounds as quoted to him by the agent at Fisk; the freight bill amounted to $43.12, and this amount was paid by respondent.

It also appears that the Western Weighing and Inspection Bureau makes an inspection of perishable freight for all carriers delivering freight into St. Louis, and, about eight o'clock A. M., on the 27th day of July, 1938, the representative of the bureau inspected the car of melons. He determined that the car had not been loaded in accordance with the tariff rules and regulations filed with the Missouri Public Service Commission, and, as the shipment was an intrastate one, a penalty of $9.24 was assessed against respondent for improper loading, and the car was closed until this amount was paid. Respondent did not have the money to pay the penalty and was required to borrow the same, or a part thereof, which took some time, but after paying the amount of the penalty, the car of melons was turned over to him. While there is some conflict in the evidence as to just when the car was turned over to respondent, it does appear that the car was not emptied until July 30th, and, in addition to the freight fine or penalty, respondent was required to pay a demurrage of $2.20.

There is substantial evidence in the record to support the finding of the jury that the closing of the car and the delay resulting therefrom, prevented respondent from making an advantageous sale of the melons, to his actual damage in the sum of $175—which was the difference between what he realized from the sale of the melons by peddling them out over a period of three days and what he was offered, and would have received for his melons, if he had been permitted to sell them on July 28th, 1938.

The undisputed evidence shows that the car was not loaded according to the rules of the company as set forth in its tariff, by the use of clean grain straw, hay or excelsior, but was loaded with crab grass, and the doors were not boarded as the schedule required. Respondent's evidence was to the effect that the car was loaded under the supervision and direction of the station agent and that after it was loaded the agent approved it and sealed the car. The evidence of the appellant was in conflict therewith and to the effect that the station agent informed the respondent that the car was not properly loaded to comply with the rules of the company. The conflict in the evidence with reference to these matters is unimportant. The appellant does not assign, as error, that there was no substantial evidence to sustain respondent's contention that he lost a sale of his melons and was damaged by the exacting of the penalty of $9.24 and the closing of the car until the penalty was paid, but seeks to justify the act on the sole ground that the company was compelled, under its schedule filed with the Public Service Commission, to collect the penalty before delivering the car to the respondent. Appellant contends that, under the Public Service Commission Act as construed by the Missouri Supreme Court, the appellant had no discretion in the matter, and, even though the failure to deliver the car promptly resulted in damages to respondent, there can be no recovery for the reason that the act of the appellant was entirely lawful and in accordance with the requirements of the Public Service Commission Act. For this reason, appellant requested a directed verdict at the close of respondent's evidence and again at the close of all of the evidence in the case, and assigns the refusal of the court to so direct a verdict, as the main error in the case.

There is no claim on the part of the respondent that the melons were damaged in any way on account of the manner in which they were loaded. The undisputed evidence is that the melons were in good shape when they reached St. Louis.

Respondent contended that he was entitled to recover even though the penalty was legally assessed. He did not file a printed brief, but was permitted to argue the case orally. It seems to us that the decisive question in the case it whether the penalty or fine was lawfully assessed by the appellant, and whether appellant had a lawful right to close the car and refuse to deliver the melons to the respondent until the fine or penalty was paid.

The amount involved in this case is comparatively small. The suit was commenced in the Justice Court, and the amount of actual damages claimed in the petition was $150 on account of the loss of the sale of the melons. He also sought to recover $80 punitive damages. The amount of the jury's verdict was $175, which was the difference between the $300 which the jury found was the amount for which respondent could have sold his melons, and the $125 that he was compelled to sell them for on account of the wrongful act of the ap-

pellant. The damages are no doubt quite important to the respondent as it appears that he is a share-cropper, and the melons were perhaps a major part of his crop. In the instant case the damages that the appellant would be required to pay if the judgment were affirmed would make little difference to the railroad, but, if the provision in the appellant's schedule is the conventional one usually contained in such tariffs, the outcome of this case would be of considerable importance, not only to the appellant, but to the other railroad companies.

Appellant contends that, under the statutes (Secs. 5149 and 5155, R. S. 1929), it was required to establish, promulgate and file a schedule of rates, rules and regulations, with the Public Service Commission; that it complied with these provisions, and that the tariff so filed bound the shipper by its terms, conditions and regulations, and that appellant could not waive nor be estopped from conforming and complying therewith; and cites, in support of its contention, the case of Mellon v. Stockton & Lampkin, 30 S. W. (2d) 974, 975, and other Missouri cases so construing these statutes. [Sonken-Galamba Corporation v. Missouri Pacific R. R. Co., 40 S. W. (2d) 524, 529; Mellon v. Stockton & Lampkin, 35 S. W. (2d) 612, 613; Lancaster v. Schreiner, 212 S. W. 19, 21; Bush v. Keystone Driller Co., 199 S. W. 597, 599.] These cases do not deal with the power or authority of the appellant to exact the penalty in the instant case.

If the penalty under the tariff provision is a rate within the meaning of the statute, there is no possible doubt but that those opinions are decisive of this case. If it is not a rate, calling it a rate does not make it one. "A rose would smell as sweet by any other name." We have concluded that it has none of the characteristics of a rate, and the rate statute does not authorize the imposing of such a penalty by including it in the schedule of rates, as a penalty for not properly packing the melons.

Section 5149, under Article 2, "Public Service Commission," provides, among other things:

"Every common carrier shall file with the commission and shall print and keep open to public inspection schedules showing the rates, fares and charges for the transportation of passengers and property within this state between each point upon its route and all other points thereon;" etc.

Section 5155 provides, among other things:

". . . No common carrier shall charge, demand, collect or receive a greater or less or different compensation for transportation of passengers or property, or for any service in connection therewith, than the rates, fares and charges applicable to such transportation . . ."

Section 5167, providing for the rates and service to be fixed by the commission, provides, among other things:

"Whenever the commission shall be of opinion, after a hearing had upon its own motion or upon complaint, . . . that the maximum rates, fares or charges, chargeable by any such . . . railroad corporation . . . are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall, with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, . . ."

This statute requires the rate to be just and reasonable, with due regard, among other things, to a reasonable average return upon the value of the property actually used in the public service. The penalty in question, so far as we can see, has no regard either to a reasonable return upon the value of the property actually used in the public service, or *to the value of the service rendered*. It has none of the elements of a rate. The service rendered where the goods are improperly packed, is identical with the service rendered where the goods are properly packed. The exaction of a penalty · for improperly packing the goods would, of course, increase the revenues of the corporation to the extent of the money received; but it would have no apparent relation either to the value of the service actually rendered, or to a reasonable return upon the value of the property used. It would be in excess of the reasonable return upon the value of the property used. The power of the railroad company to assess such a penalty, or of the commission to authorize its collection, would depend, not upon the power to establish rates, but upon the power of the corporation to make reasonable rules and regulations as to the form in which it will receive commodities it undertakes to carry. Under its authority to make such rules, the railroad company no doubt could, for its own protection, provide for the manner in which watermelons or other commodities were to be packed, and to also provide, if the goods were not packed in accordance with the rules, that the railroad company would not be liable for any damage to such goods. It is hard to see, however, how the railroad company, in addition to exempting itself from liability for damages to improperly packed goods, could fine the shipper for not packing his goods according to their rule. In such a case it is the shipper, and not the railroad company, who suffers the damage from failure to properly pack his goods. A rule contained in its schedule and properly approved by the commission, exempting the railroad company from liability for damages caused to goods because they were not properly packed, would no doubt be valid, in accordance with the policy expressed in Section 4744, which contains this provision:

". . . he (the shipper) shall have the right and privilege to put in said car or cars two or more species of live stock, or different kinds of grain, or different articles of commerce or trade: Provided, that any such shipper of two or more species of stock, in the same car or cars, shall ship the same at his own risk of injury solely by reason of such mixed shipment; otherwise at the risk of the carrier."

The appellants in this case offered to prove "that the purpose of loading cars as provided for in the tariff, which has been read to the jury in this case, is to avoid damage to the shipper by reason of the melons shipped, and to avoid litigation and claims."

According to the appellant's own contention, the purpose of the rule was to prevent the shipper from recovering damages to the melons not properly packed. It is the shipper, and not the railroad company, who would be damaged in such case, and, so far as we can see, there is no possible justification for requiring the shipper, in addition to suffering the damages for his failure to properly pack his goods, to compensate the railroad company for damages that it does not claim to have suffered, and which, concededly, it did not suffer in this case. The exaction of the penalty under such circumstances, it seems to us, is not only unreasonable but is entirely arbitrary and unjustified. Measured by the statutory provisions for determining the rate, the penalty has none of the characteristics of a rate. Neither does it come within the power of the corporation, with the approval of the commission, to make rules to protect itself against being required to pay damages for property injured in transportation, when such property was not packed according to the rules of the company.

In addition to the rate charged for the service rendered, the railroad company would, with the approval of the commission, have the power to require an inspection fee to compensate it for the actual expense of inspecting its cars. To be reasonable and non-discriminatory, such a fee would have to apply to all cars inspected and not just to the cars that, on inspection, were found to be improperly packed. It would be a mere matter of chance as to whether the penalty thus collected would be sufficient or insufficient to compensate the company for making the inspection. If only a few cars turned out to be improperly packed the penalty collected would not compensate the company for the expense of inspecting the cars, and, if a great number of cars were not properly packed, the amount of the penalty would no doubt exceed the cost of inspection. From whatever angle you view the penalty, it would seem to us to be entirely unjustified. We have not been cited to any case that deals directly with the question, nor have we been able to find any authority dealing with the exact question.

We think it is perfectly self evident that the penalty exacted was not a transportation rate. That it is not, has been decided by at least two courts:

[Harvely v. Southern Ry. Co., 78 S. E. 887 (Sup. Ct.).] In that case the rule of the railroad company required the shipper of logs to make them secure by stakes, etc. The shipper failed to do so, and the railroad company exacted, in addition to the freight charge, 75 cents as the cost of procuring the stakes. The shipper sued the railroad company for unlawfully extorting from him the 75 cents so charged. In discussing the case, the court said:

" . . . The 75 cents charged was not a 'toll or compensation for the transportation.' The charge was for restaking, and not for transportation."

[United States Express Co. v. State (Okla.), 150 Pac. 178, l. c. 182.] This was a suit for refusing to receive money, under a rule of the company. The Express Company sought to sustain its position by asserting that the rate it charged for transportation of money was not sufficient to compensate it for hiring a guard during the night preceeding the day on which the money could be transported. In considering the case the court said:

"Besides, the primary purpose of the order is not to fix rates to be charged by the appellant for the service required, and appellant may apply to the Corporation Commission at any time for a readjustment of its rates for the service required, so as to permit it to prescribe such rates for this and other service as will enable it to receive from its business fair and equitable revenues, if the same should be shown to be inadequate. . . ."

If authority for so plain a proposition is desired, we think the cases *supra* very clearly show that the penalty in the instant case is not a rate for transporting the melons. It does not purport to be a rate, and clearly has none of the characteristics of a rate which the railroad company was entitled to establish, with the approval of the commission. It clearly and undoubtedly is a charge in addition to the lawful rate insofar as the penalty exceeds the reasonable expense to the corporation for making the inspection. To this extent it is a double charge for identically the same thing. It has been directly held by the Supreme Court of this state that such a double charge cannot be sustained, even with the approval of the Public Service Commission. The State ex rel. Kansas City Southern Ry. Co. v. Pub. Serv. Comm., 265 Mo. 399 (en banc), in which it is held:

" . . . Tract storage is not a distinct and separate service from the service for which demurrage is charged. . . ."

While there is no similarity between the facts in that case and the facts in the instant case the same principle is involved in both cases. The only distinction between that case and the instant case is that there the proceedings were instituted by the railroad company, to review the action of the Public Service Commission in setting aside and cancelling the track storage charge. This distinction does not differentiate the cases unless the respondent had a legislative remedy

which he was required to exaust before seeking redress in the courts. We will discuss this question later.

Numerous cases might be cited to show that, by the common law, the railroad company can establish reasonable rules and regulations governing the manner and form in which it will receive such articles as it professes to carry, and providing how they shall be packed for shipment so they may be handled and transported conveniently, safely and expeditiously. [Harp v. Choctaw, O. & G. R. Co., 125 Fed. 445, 1. c. 450 (C. C. A. 8).] It is also true that the burden is upon him who assails such regulations, to prove that they are unfair and unjust, and it is only when it clearly appears, by competent evidence or as a matter of law, on their face, that they are unreasonable, that commissions or courts may lawfully interfere to annul or change them. [Platt v. Lecocq, 158 Fed. 723, 1. c. 731 (C. C. A. 8).]

In the instant case the penalty, in our opinion, is referable to the power of the railroad company to establish reasonable regulations as to the form in which it will receive watermelons, rather than to the rate-making power for the transportation of property, subject to the approval of the Public Service Commission.

In the instant case the Public Service Commission did not affirmatively approve the alleged penalty. Concerning this, the rate clerk who identified the schedule of rates, testified:

"Q. Did the Public Service Commission of Missouri approve the rate that you have just mentioned? A. It is tantamount to approval, by reason of the fact that they permit us to file and accept the tariff."

From this it will be seen that the Public Service Commission has never passed on the reasonableness of the rule. Assuming that the filing of the tariff without the disapproval of the commission is equivalent to the approval of the tariff, it does not follow that the tariff can be attacked only by a direct proceeding in the first instance before the Public Service Commission. This, of course, is the federal rule, but we think that the undisputed facts in the instant case bring the case within the well recognized exception to the rule. [Great Northern R. Co. v. Merchants Elevator Co., 259 U. S. 285-296, 66 L. Ed. 943-948.] In this case it is held that a preliminary resort to the Interstate Commerce Commission for its decision is not essential to support the jurisdiction of the courts over cases involving a disputed question of construction of an interstate railway tariff, where no fact, evidential or ultimate, is in controversy, and there is no occasion for the exercise of administrative discretion, the task to be performed being to determine the meaning of words of the tariff which were in their ordinary sense, and to apply that meaning to the undisputed facts.

The facts in the instant case bring it well within the rule there announced. The legal question involved here is whether the $9.24 penalty charged and collected by the railroad company was a transportation charge within the meaning of the statute authorizing the

commission to approve the charge. Viewing it from this angle, it is clearly a double charge for the same service, as is directly held by our Supreme Court in State ex rel. v. Public Service Commission, 265 Mo. 399, *supra.*

The railroad company had no authority to present to the commission a schedule containing a double charge for the same identical service nor did the Public Service Commission have any jurisdiction or authority to approve such a schedule. The actual approval of the schedule by the commission would have been in excess of its jurisdiction and its failure to approve the schedule does not change the characteristics of the alleged penalty. Calling it a transportation rate does not make it one. The only service performed by the railroad company in addition to transporting the property was inspecting the car. The penalty had no relation to the cost of the inspection. It does not purport to be, and clearly is not, an inspection fee.

As early as 1870, our Supreme Court, in the case of The City of St. Louis v. Boatmen's Ins. and Trust Co., 47 Mo. 150, had occasion to deal with this exact question, in a case involving the charter of the City of St. Louis. The court there said:

"By the forty-fifth subdivision of the section, the charter merely gives the power 'to license all insurance companies,' etc. The uniform course of decision is that a right to license an employment does not imply the right to charge a license fee therefor with a view to revenue, unless such seems to be the manifest purpose of the power; but the authority of the corporation will be limited to such a charge for the license as will cover the necessary expenses of issuing it, and the additional labor of offices and expenses thereby imposed. A license is issued under the police power, but the exaction of a license fee with a view to revenue would be an exercise of the power of taxation; and the charter must plainly show an intent to confer that power, . . . [l. c. 152, 153.]

"The words 'to license' may imply the power to tax when such is the manifest intention; but taken disconnected and alone they will not generally confer that authority. . . ." [l. c. 154.]

On exactly the same principal, the power to make a reasonable charge for transporting property does not include the authority to make a double charge. The power to inspect the property sought to be transported, under a reasonable rule of the company for its own protection, is clearly limited to the reasonable cost and expense—or at least the probable cost and expense—of making such inspection. A penalty for failing to pack the property according to the rules of the company has, so far as we can see, no relation to a reasonable transportation charge, nor a reasonable inspection fee based on the cost, or probable cost, of making the inspection. Clearly, such a penalty is arbitrary and without any authority or justification.

The appellant in the instant case says that the Western Weighing and Inspection Bureau was in no way connected with the Missouri Pacific Railroad Company. Appellant does not enlighten the court as to the authority, if any, under which the bureau purported to act. It was either an intermeddler or it was acting for the railroad company. If it was an intermeddler, the freight agent had no right to close the car, based on such inspection. The bureau was no doubt paid by the railroad company. There is no claim that it was paid by the respondent or that it performed the service at his request, or that it benefited him in any way. Our attention has not been called to any provision of the Public Service Commission Act, or the statute relating to railroads, requiring such an inspection, or giving the bureau an official standing. Hence, we can reach no other conclusion than that, in the instant case, the bureau was the agent of the railroad company, or more accurately speaking, its receiver. No provision of the Public Service Commission Act has been called to our attention that either authorizes or requires the shipper to procure an order from the commission to return to him an excessive rate charged in violation of the law, as it seems to be within the authority of the Interstate Commerce Commission; but, even if the Public Service Commission Act contains such a provision, under the authority of Great Northern R. Co. v. Merchants Elevator Co., 259 U. S. 285-296, 66 L. Ed. 943-948, *supra*, it would not apply to this case where the shipper is not merely seeking to recover the penalty unlawfully exacted, but is seeking to recover damages by reason of the wrongful acts of the appellant in refusing to promptly deliver his property, which wrongful refusal resulted in preventing him from making an advantageous sale of his property, to his substantial damage. Jurisdiction to decide the instant case could not be conferred on the commission. [State, etc. v. Pub. Serv. Comm., 303 Mo. 212.]

The appellant makes a further point with reference to the instructions. He concedes that there was substantial evidence to show that the respondent suffered actual damages in the amount of $175, on account of appellant's act in exacting the penalty. This fact, found by the jury in respondent's favor, together with the legal conclusion that the penalty was unauthorized and unlawful as a matter of law, conclusively establishes that there was no justification for appellant's refusal to promptly deliver the melons. These facts entitle the respondent to recover, regardless of errors in the instructions.

The judgment in the case is for $175, which there is substantial evidence to show was the amount of the damages in fact suffered by the shipper. In his petition, respondent sued for only $150 actual damages for the loss of the sale of his melons, and $9.24, the penalty assessed, making a total of $159.24, for which amount the judgment will be affirmed as of the 19th day of July, 1939, the date of the judgment, if the respondent, within ten days from this date, shall

elect to enter a *remittitur* of $15.76, thereby reducing the judgment to $159.24; or, upon his failure to remit said amount, the judgment will stand reversed for a new trial. *Smith* and *Fulbright, JJ.,* concur.