J. L. LANCASTER and PEARL WIGHT, Receivers of the TEXAS AND PACIFIC RAILWAY COMPANY, Appellants, v. GEORGE W. SCHREINER, Respondent.

**Springfield Court of Appeals, May 9, 1919.**

1. **CARRIERS: Rates: Interstate Commerce.** Where a shipper delivered an interstate shipment of goods to a carrier and directed it to be sent over a route having an established through charge, the

initial carrier was charged with the duty to make necessary notations on the waybill, and the shipper had the right to assume compliance with that duty, and he was not responsible for any misrouting.

2. ———: Action to Recover Charges: Presumptions. In an action by a carrier to recover charges, where neither the bill of lading nor the waybill issued by the initial carrier was introduced in evidence, it must be presumed that they designated the routing of the shipment as stated in a receipt issued by such carrier to the shipper, especially in view of Interstate Commerce Act, Sec. 20 (U. S. Comp. St., Secs. 8604a, 8604aa), providing a penalty for issuing a false bill of lading.

3. ———: Connecting Carriers: Misrouting: Innocent Parties. A connecting carrier receiving a shipment of goods which was not routed over its line will be charged with knowledge that it was aiding in misrouting the shipment, where, the bill of lading and waybill designated the proper route.

4. ———: Established Rates: Contracts. An interstate carrier cannot, by contract or otherwise, by estoppel or waiver, directly or indirectly, increase or decrease the duly established freight rates, and the shipper must make good any deficiency not collected, regardless of the cause; freight rates established by the approval of the Interstate Commerce Commission dominating every shipment and contract, and this rule applies to a through rate made up of the sum of local rates of connecting carriers.

5. ———: Rates: Selection of Route. Where a shipper delivers goods to a carrier, he is entitled to have the goods sent over the cheapest route, and without even making a selection.

6. ———: Misrouting: Established Through Rates. In case an interstate shipment of freight is misrouted so that the shipper or consignee is compelled to pay a larger amount of freight charges than the established through rate, the carrier or carriers, whether initial or connecting, which are guilty of the misrouting, must stand the loss, and cannot collect the excess charges caused by the misrouting, and, if paid by the shipper or consignee, must refund the overcharge, especially in view of Interstate Commerce Rule 214, Sec. (d), relating to misrouting shipments.

7. ———: Liability of Carrier: Relation of Connecting Carriers. Where shipper ascertained through rate and designated the proper route and paid the correct amount of charges for the through shipment, the initial carrier was responsible for the through shipment, though part of the route was over a connecting carrier, the connecting carrier becoming, in a measure at least, the agent of the initial carrier to complete the shipment, and there was such contractual relation between the two carriers that the connecting carrier could hold the initial carrier for its lawful share of freight charges.

8. ————: **Interstate Carriers: Freight Charges: Actions.** The spirit of the Interstate Commerce Act with the Carmack Amendment (U. S. Comp. St., Secs. 8604a, 8604aa) is to treat connecting lines of transportation as one line so far as the shipper is concerned, and to compel the different companies forming a through route to deal as a unit with the shipper, and to then adjust all differences as to individual liability among themselves, and thus, where a shipment was misrouted and the proper charges were paid to the terminal carrier, such terminal carrier should not be allowed to sue the shipper for the local established charges over the actual route of the shipment, but should be required to settle the matter with the other carriers, because to collect the money from the shipper would be to collect money for the benefit of an offending carrier, money which must again be returned to the shipper by the offending carrier.

Appeal from Barton County Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*Edwin L. Moore* for appellants.

*H. W. Timmonds* for respondent.

STURGIS, P. J.—This is a suit to recover from the shipper an alleged balance due for freight charges on a shipment of hay from Golden City, Missouri, to New Orleans, Louisiana. The trial court denied plaintiff's right to recover and it appeals.

The facts are not disputed. The defendant delivered to the St. Louis & San Francisco Railroad, hereafter called the Frisco, at Golden City, Missouri, two car loads of hay for shipment to Leonhardt Company, consignee, at New Orleans. The defendant shipper made inquiry of the station agent at Golden City and ascertained that there was in force a through tariff rate, duly approved by the Interstate Commerce Commission, of thirty-one cents per hundred pounds from Golden City to New Orleans. This through route was via Frisco Railroad to Wister, Okla., thence via Chicago, Rock Island and Pacific Railway, hereafter called the

Rock Island, to Alexandria, thence via Louisiana Railroad and Navigation Company, hereafter called the L. R. & N. Co. to New Orleans. The defendant designated this route of shipment and received from the initial carrier, the Frisco Railroad, a receipt showing the goods to be shipped, consigned to Leonhardt Company, "destination, New Orleans, Route L. R. & N. at Shreveport, Shippers routing." Instead of shipping the hay over the route so designated the shipment was made by the Frisco Railroad to Memphis, Tenn., thence via the Rock Island Railroad to Alexandria, La., and thence via the Texas & Pacific Railroad, plaintiff here, to New Orleans. The plaintiff railroad as terminal carrier delivered the hay to the consignee at New Orleans and collected the amount of the approved through tariff rate of thirty-one cents per hundred, amounting to $157.14. More than a year thereafter the plaintiff brought this suit, alleging that the freight charges due on this hay "as shown by the authorized tariffs then in effect and on file with the Interstate Commerce Commission amounted to $288.93, which defendant promised and agreed to pay; that defendant has paid the sum of $157.14, leaving a balance due of $131.79 which defendant owes but has refused to pay."

This claim arises solely from the fact that the hay in question was misrouted. The Frisco Railway carried it to Memphis, Tenn., instead of Wister, Okla. It was delivered to the Rock Island at Memphis instead of at Wister. The Rock Island delivered it to the Texas Pacific at Alexandria instead of to the L. R. & N. at that point or at Shreveport. There seems not to have been any approved through tariff rate from Golden City, Missouri, to New Orleans over the route the hay was actually shipped and the rate now demanded of defendant is the deficiency in the sum of the duly approved local rates, to-wit, from Golden City via Frisco to Memphis, nineteen cents, from Memphis to Alexandria via Rock Island, twenty-three cents, and from Alexandria to New Orleans via Texas & Pacific, fifteen cents, making a total

of fifty-seven cents per hundred weight instead of the through rate of thirty-one cents via the Shreveport route. The correctness and due approval by the Interstate Commerce Commission of these various local rates over the route the hay was actually shipped, as well as through rate of thirty-one cents had the hay been shipped via the route designated by the shipper, are not disputed.

This defendant, the shipper, had nothing to do with the actual shipment of the hay after delivering it to the initial carrier and designating the proper routing. No explanation is offered as to why the hay was misrouted by the Frisco Railroad in carrying it via Memphis rather than via Wister—the two routes being wholly divergent. There is nothing to show that either the shipper or consignee had any knowledge or means of knowledge of the hay having been shipped via Memphis and the Texas & Pacific Railroad instead of via Wister and the L. R. & N. Company. The plaintiff road is not a part of the through route designated by the shipper over which the established through rate applied and no explanation is offered as to why this hay was delivered by the Rock Island to plaintiff at Alexandria instead of to the L. R. & N. the properly designated route, at that point even after being shipped to that point via Memphis instead of Wister. There was clearly a misrouting of the shipment both by the Frisco road in carrying it via Memphis and by the Rock Island in delivering it to the Texas & Pacific at Alexandria instead of to the L. R. & N.

Nor is it shown that plaintiff is innocent in this respect. It is not so claimed in the pleadings. Neither the bill of lading nor the way bill issued by the initial carrier is in evidence but defendant put in evidence a receipt issued to him by such carrier which sets forth the terms of shipment and states that a bill of lading has been issued. The form and substance of this receipt are like the usual bill of lading and such receipt states that the route is "via L. R. & N. at Shreveport" and

that same is the "shipper's routing." · Section 20 of the Interstate Commerce Act requires the initial carrier to issue a bill of lading and provides a penalty for issuing a false bill of lading. We should not assume that the bill of lading for this hay, or what is more important the way bill used by the carriers, contained a different routing than that designated by the shipper and contained in the receipt. As said in St. Louis S. W. R. Co. v. Spring River Stone Co., 59 L. Ed. 805, 809, in reference to the contents of way bills used by carriers: "In the circumstances, the initial carrier was charged with the duty of making these notations and for the purposes of this suit the shipper might assume compliance with that duty—he was not required to establish actual performance." The · shipper had no control over this shipment after delivering it to the initial carrier and did not know and had no means of knowing, or of controlling if he did know, the route over which the shipment was actually made. He designated the proper route and there his duty and responsibility ended. If, as we must presume, the bill of lading and way bill designated the routing of this shipment, as did the receipt issued, as "Route L. R. & N. at Shreveport" then plaintiff knew that it was aiding in misrouting the shipment on its receiving it at Alexandria. Drake v. Railroad, (Tenn.) 148 S. W. 214, where it is said:

"It was negligence on its part not to know of that agreement before it received the goods. It was within its legal right to insist upon a showing from its codefendants of their authority to offer the goods to it for transportation. A common carrier is not bound to accept for transportation goods from any person other than the owner, or the duly authorized agent of the owner."

It is also significant that the plaintiff collected on delivering the shipment, not the sum of the local rates over the route actually travelled, but the proper through rate via the through route, showing that it

had knowledge of the through rate either from the bill of lading and way bill or from the published through rate over a route of which its own line was not a part.

The plaintiff relies on the proposition that this shipment actually moved over the Frisco to Memphis, over the Rock Island to Alexandria and thence over plaintiff's road to New Orleans, the combined local rates over which route amount to fifty-seven cents per hundred weight and that under the law it has no option to collect a lesser rate. It invokes the doctrine, so well established as not to be debatable, that a carrier cannot by contract or otherwise, by estoppel or waiver, directly or indirectly, increase or decrease the duly established freight rates and that the shipper must make good any deficiency not collected regardless of the cause. Freight rates are established by the approval of the Interstate Commerce Commission and when so duly established dominate every shipment and contract therefor and therein there can be neither variableness nor shadow of turning. [1 Roberts Federal Liabilities of Carriers, secs. 257 and 263; Judson on Interstate Commerce (3 Ed.), sec. 368; Railway Co. v. Stone Co., 169 Mo. App. 109, 124, 133, 154 S. W. 465; Bush v. Keystone Driller Co., 199 S. W. 597; New York, New Haven & Hartford Railroad Co. v. Interstate Commerce Commission, 50 L. Ed. 515; Texas & Pacific Ry. Co. v. Mugg & Dryden, 50 Law Ed. 1011; Central Railroad Co. v. Mauser, 241 Pa. 603, 49 L. R. A. N. S. 92.] This rule applies to a through rate made up of the sum of local rates of connecting carriers. [1 Roberts Fed. Liability of Carriers, secs. 273, 274.]

In the present case, however, the shipper or consignee has paid the full amount of the duly established rate for this shipment. He is in no way claiming any deduction from or variation of such established rate. On the contrary the plaintiff is seeking to compel the shipper to pay a higher rate than the established rate merely because the shipment was actually and wrongfully sent over a longer and different route than that

selected by the shipper and to which cheaper route he was entitled even without making a selection. [Judson on Interstate Commerce (3 Ed.), sec. 375; Spreckles Bros. Commission Company v. Railroad, 18 I. C. C. 190.]

It is equally well established that in case a shipment of freight is misrouted so that the shipper or consignee is compelled to pay a larger amount of freight charges than the established through rate, the carrier or carriers, whether initial or connecting, which are guilty of the misrouting must sustain the loss and if paid by the shipper or consignee must refund the overcharge. The offending carrier must alone bear such loss without the right of exacting or receiving contribution. [Noble v. Jonesboro, Lake City & Easter Ry., 20 I. C. C. 520; Lord & Bushnell Co. v. Mississippi Central Railroad, 22 I. C. C. 463; Henepin Paper Co. v. Northern Pacific Railway, 12 I. C. C. 535; Cressy & Co. v. Railroad, 18 I. C. C. 132; Grand Rapids Plaster Co. v. Railroad, 15 I. C. C. 68.]

The plaintiff put in evidence here a ruling adopted by the Interstate Commission, Rule 214, Section (d), which reads:

"If a carrier's agent misroutes a shipment and thus causes extra expense to the shipper over and above the lawful charges via another available route of the class designated by shipper—that is, all rail or rail and water—over which such agent had applicable rates which he could lawfully use, and responsibility for agent's error is admitted by the carrier, such carrier may, as to shipments. moving subsequent to March 18, 1907, adjust the overcharge so caused by refunding to shipper the difference between the lawful charges via the route over which shipment moves and what would have been the lawful charges on same shipment at the same time via the cheaper available route of the class designate which could have been lawfully used. Such refund must in no case exceed the actual difference between the lawful charge via the different routes as

specified, and must in every instance be paid in full by the carrier whose agent caused such overcharge and must not be shared in by or divided with any other carrier, corporation, firm or person.''

It is obvious, therefore, that no carrier itself guilty of a misrouting can collect from the shipper the excess charges caused thereby and there is a basis for the trial court's holding here that the plaintiff is not innocent in this respect.

The plaintiff here concedes that if defendant is compelled to pay the excess sued for in this case he can recover the same against the carrier or carriers guilty of misrouting this shipment. Its contention is that, on account of the rigid conditions of the Interstate Commerce Act, the plaintiff must sue for and defendant must pay the amount of the combined local rates of the route over which the shipment was actually sent, though by no fault of the shipper, and the shipper must then in turn sue for and recover the excess which he is thus forced to pay from the offending carrier. We see no reason, however, why the plaintiff if it has not retained its own charges in full, as to which we are not advised, should not itself sue such offending carrier to adjust such difference. If plaintiff is guiltless in the premises and is entitled to its full compensation for transporting in good faith this hay from Alexandria to New Orleans we know of no reason why it did not retain such amount from the amount collected from the consignee. In this suit plaintiff is not only seeking to collect from the shipper, who is without fault and has paid all that is justly due, its own charge but also the charges alleged to be due the other two carriers, one or both of whom are clearly guilty of misrouting the shipment and thereby causing the excess which plaintiff sues to recover. Why should plaintiff be allowed to recover from defendant for the benefit of the offending carrier the very amount which such offending carrier must refund to defendant? We see no reason for two suits where only one, if any, is needed. The case is the

same as if the shipper on ascertaining the through rate and designating the proper route had paid the initial carrier the correct amount of charges for the through shipment. The initial carrier would then be responsible for the through shipment though part of the route was over a connecting carrier. The connecting carrier becomes in a measure at least the agent of the initial carries to complete the shipment (1 Roberts Federal Liabilities of Carriers, sec. 333; Galveston, Harrisburg & San Antonio Ry. Co. v. Wallace, 56 Law Ed. 516), and there is such contractual relation between the two carriers that the connecting carrier could hold the initial carrier for its lawful share of freight charges. The spirit of the Interstate Commerce Act with the Cormack Amendment is to treat connecting lines of transportation as one line so far as the shipper is concerned and to compel the different companies forming a through route to deal as a unit with the shipper and to then adjust all differences as to individual liability among themselves. The wisdom and fairness of this course has been demonstrated and is obvious. We see no reason, therefore, why plaintiff, if anything is yet due it, should not look to the initial or preceding carrier for any redress due it rather than to seek to collect from defendant for the benefit of the offending carrier money which must be again returned to the defendant.

We decline to hold that plaintiff should recover under the facts here and in doing so are in no way encroaching on the rule that the shipper must pay and the carrier collect the established rate and that such rate cannot be varied or departed from by any manner of indirection or subterfuge. We think this holding accords with what the court held in St. Louis Southwestern Railway Company v. Spring River Stone Company, 59 L. Ed. 805, that where the shipper has in good faith paid the full established rate then the carrier cannot collect from him a greater amount because of some dereliction of its own duty in making the shipment.

We have carefully considered the case of Louisiana R. & N. Co. v. Holly, 127 La. 615, 53 Southern Reporter 882, where the facts are for the most part similar to those here. In that case, however, the shipper had not designated the route of shipment and only claimed that there was a through route over which the initial carrier might have sent the shipment at a lesser rate. Nor was there a basis for a finding in that case that plaintiff was not innocent of the misrouting. We are not, however, altogether satisfied with the reasoning of that case.

The judgment here we think is for the right party and is affirmed. *Bradley* and *Farrington, JJ.,* concur.