ANDREW W. MELLON, Director-General of Railroads and Agent of United States, Appellant, v. STOCKTON & LAMPKIN, A Partnership Composed of J. H. LAMPKIN and E. B. STOCKTON.—30 S. W. (2d) 974.

Division One, September 4, 1930.

*J. F. Green, W. E. Suddath* and *Grover, Tipton & Graves* for appellant.

*M. D. Aber* for respondents.

FRANK, J.—This action was brought in the Circuit Court of Johnson County on August 7, 1920, by John Barton Payne, then Director-General of Railroads, against respondents, to recover a balance of $218.74 claimed to be due from respondents for freight on

certain shipments of coal. Later James C. Davis became Director-General of Railroads and was substituted as party plaintiff. Still later, Andrew W. Mellon succeeded Davis in said office, and was substituted as plaintiff herein. The cause was tried on an agreed statement of facts and resulted in a judgment for defendants. On application of plaintiff an appeal was granted to the Kansas City Court of Appeals, and that court transferred the cause to this court on the ground that a constitutional question was involved. 

The substance of the agreed statement upon which the case was tried, is as follows:

1. That at the times in question the United States was at war with the German Empire, and as a war measure the Government took over the operation of the railroads and assumed control of the fuel supply of the United States. The railroads were operated by a Director-General of Railroads and the fuel supply was controlled by a United States Fuel Administrator.

2. That respondents, as partners, were engaged in the business of selling coal at retail in Warrensburg, Missouri. Coal was shipped to them from Myrick and Wellington, Missouri, to Warrensburg, Missouri, over the Missouri Pacific Railroad, then operated by the United States Government through its Director-General of Railroads.

3. That the tariff rate promulgated and established by the Interstate Commerce Commission to apply to said shipments of coal was $1.40 per ton, but plaintiff charged and defendants paid only $1.10 per ton.

4. That the United States Railroad Administration informed the United States Fuel Administration that $1.10 was the correct and proper freight rate to be charged for the shipment of said coal.

5. That the United States Fuel Administrator fixed the price which defendants should pay for said coal at the mines at $3.80 per ton, required them to pay the $1.10 per ton freight which the Railroad Administration had said was the proper charge, fixed $1.50 per ton as the amount defendants should receive for handling the coal, and required them to sell it at $6.40 per ton; that the retail price was fixed at $6.40 per ton under the belief that $1.10 per ton was the lawful freight rate.

6. That the shipments of coal were twenty-two and one-half tons short; that defendants paid freight on said shortage in the sum of $24.75; that if such coal was shipped it was lost by plaintiff.'s failure to deliver it to defendants, who had paid $85.50 for it; that defendants bought and sold the coal at prices fixed by the Fuel Administrator and on account of said shortage and the high cost of labor required to handle said coal, defendants made no profit.

7. That the difference in the amount of freight on the coal shipped, figured at $1.10 per ton instead of $1.40 as fixed by the

Interstate Commerce Commission would be $212.35, and if plaintiff is entitled to recover the recovery should be $212.35 plus $6.39 war tax, or a total of $218.74.

As the amount in dispute does not exceed $7500, we do not have jurisdiction, unless a constitutional question is involved in the case.

Defendants plead in their answer that relying upon the representations of the Government of the United States through its representatives that they should have the sum of $1.50 per ton for handling said coal, they expended time and money in the prosecution of said business. The answer alleges:

"That to charge the defendants now the rate of freight sought to be imposed by this proceeding would operate to take from them all of the amounts made and received by them pursuant to the offers and representations so made, and amount to taking from the defendants their property, being their time, energy, efforts, the use of their private funds and property, without due process of law, and without just compensation, and to be a taking of their private property for public use without just compensation, being in violation of Articles V and XIV of the Constitution of the United States; that it would take from the defendants the enjoyment of the gains of their own industry; take from them their private property for private use, without compensation; take from them their private property for public use without compensation and deprive them of their property without due process of law, being in violation of Sections 4, 20, 21 and 30 of Article II of the Constitution of the State of Missouri."

It is also alleged that other coal dealers in Warrensburg bought and sold coal at the same fixed prices, shipped it from the same points, paid the same freight rate of $1.10 per ton and for that reason there was no discrimination, but to now force defendants to pay the additional freight sued for would be an unlawful discrimination against defendants and in favor of such other dealers.

The answer concludes by pleading that the foregoing facts estop plaintiff from maintaining this suit to collect the extra thirty cents per ton, even though $1.40 per ton was the legal freight rate for such shipments.

Section 10438, Revised Statutes 1919, requires that every common carrier shall file its tariff schedules with the Public Service Commission. Section 10444 of the same statute provides that:

"No common carrier subject to the provisions of this chapter shall after the taking effect of this chapter engage or participate in the transportation of passengers or property within this state, until its schedule of rates, fares and charges shall have been filed and published in accordance with the provisions of this chapter. . . . No common carrier shall charge, demand, collect or receive

a greater or less or different compensation for transportation of passengers or property, or for any service in connection therewith, than the rates, fares and charges applicable to such transportation as specified in its schedules filed and in effect at the time; nor shall any such carrier refund or remit in any manner or by any device any portion of the rates, fares, or charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property except such as are regularly and uniformly extended to all persons and corporations under like circumstances.''

This statute has been construed by our courts on numerous occasions and it appears to be the settled law of this State, ''that a carrier cannot by contract or otherwise, by estoppel or waiver, directly or indirectly, increase or decrease the duly established freight rates and that the shipper must make good any deficiency not collected regardless of the cause.'' [Lancaster & Wright v. Schreiner, 202 Mo. App. 459, 212 S. W. 19; Dunne & Grace v. Railroad, 166 Mo. App. 372, 377, 148 S. W. 997; Cicardi Bros. v. Pennsylvania Co., 201 Mo. App. 609, 624, 625, 213 S. W. 531; Chicago & Eastern Illinois Railroad Co. v. Lightfoot, 232 S. W. 176; Mobile & Ohio Railroad Co. v. Southern Saw Mill Co., 251 S. W. 434; Davis v. Moody (Ky.), 261 S. W. 1101; Illinois Central Ry. Co. v. Henderson Elevator Co., 226 U. S. 441.]

Section 10 of the Federal Control Act (Vol. 40, U. S. Statutes at Large, pp. 451, 456) provides as follows:

''That carriers while under Federal Control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal Laws or at common law, . . .''

Defendants do not challenge the constitutionality of the statute which prohibits carriers from charging or receiving for the transportation of property, a greater or less or different rate than that provided by law. Neither do they question the interpretation given this statute by the authorities above cited. Their contention is that the statute has no application to the facts of this case. This contention does not involve a construction of any constitutional provision. The Court of Appeals has jurisdiction to construe statutes and determine their applicability to a given state of facts. [Kribs v. United Order of Foresters, 222 S. W. 1005.]

For the reasons stated, this cause should be transferred back to the Kansas City Court of Appeals. It is so ordered. All concur.