WABASH RAILROAD COMPANY, a Corporation, Plaintiff-Respondent,

v.

Sam BERG, Defendant and Third-Party Plaintiff-Appellant (Richard WALLACH et al., Third-Party Defendants).

WABASH RAILROAD COMPANY, a Corporation, Plaintiff,

v.

Sam BERG, Defendant and Third-Party Plaintiff-Respondent (Richard WALLACH et al., Third-Party Defendants.

Richard Wallach Metals & Supply Company, a Corporation, Third-Party Defendant-Appellant).

Nos. 30056, 30057.

St. Louis Court of Appeals.

Missouri.

Dec. 2, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied and Opinion Modified Dec. 30, 1958.

Leo F. Laughren, R. C. Reis, St. Louis, for appellant.

Rassieur, Long & Yawitz, Robert H. Batts, Terry K. Donk, Robert Nagel Jones, St. Louis, for appellant third-party respondent.

Eugene S. Davis, St. Louis, for respondent.

DEW, Special Commissioner.

These appeals arose out of a suit between the plaintiff and defendant, a third-party petition filed therein and a counterclaim filed in the third-party proceedings. A jury was waived and the court heard and disposed of all the issues as to all the parties in the one trial.

More particularly, the plaintiff Wabash Railroad Company brought the original action against the defendant Sam Berg to collect additional freight charges claimed to be due, and recovered a judgment for $3,036.54, from which defendant Sam Berg has appealed. Defendant Sam Berg had filed a second amended third-party petition against the third-party defendants to enforce an alleged indemnity agreement with them and for a judgment therein for

whatever sum, if any, might be adjudged against him on the plaintiff's petition. On his third-party petition Sam Berg was awarded the like sum of $3,036.54 against the Richard Wallach Metals & Supply Company, third-party defendant, from which that company has appealed. The trial court found all the issues in favor of Richard Wallach, third-party defendant. The Richard Wallach Metals & Supply Company had filed a counterclaim · in the third-party proceedings and recovered thereon $1,014, from which Sam Berg, third-party plaintiff has appealed. The appeals were briefed, argued and submitted together in this court.

For convenience, the plaintiff-respondent Wabash Railroad Company, a corporation, will hereinafter be referred to as the Wabash; the defendant and third-party plaintiff Sam Berg, as Berg; Richard Wallach and the Richard Wallach Metals & Supply · Company, third-party defendants, as Richard Wallach and the Wallach Company, respectively.

The following facts are either stipulated or are otherwise in evidence without contradiction: In May, 1948, Berg and the Wallach Company, in conjunction with several others, not parties hereto, negotiated an investment in certain surplus war material under four "Invitations" published by the War Assets Administration. Four contracts ensued between Berg and the Wallach Company applicable to each of the four "Invitations," respectively, whereby it was agreed that Berg, who was qualified as a veteran to be the purchaser, should buy the material in his name and would employ the Wallach Company as his selling agent; that he would deliver the material to the premises of the Wallach Company and would receive 25 per cent of the profits made; that the Wallach Company would pay the cost of transportation and processing; and that the money for the purchases would be supplied by the Wallach Company, which would also advance to Berg certain amounts to apply on anticipated profits.

The material purchased under the contracts above mentioned was advertised as "Unprepared iron and steel scrap"; that is, it was in its original form and not broken into pieces and fragments. Accordingly, in June and July, 1948, Berg purchased and had shipped to the Wallach Company 18 carloads of the above material. The bills of lading were "straight"; that is, contained no special conditions or representations. The shipments were from points in Indiana and Illinois to St. Louis, Missouri. Three railroads participated in the shipments. The Wabash being the delivering carrier.

Upon the delivery, the Wabash presented to Berg, in care of the Wallach Company, freight bills based on the "machine" rate, which was higher than the "scrap" rate, and the Wallach Company declined to pay them, claiming the right to the "scrap" rate. Thereupon the Wabash issued new freight bills based on the scrap rate, which the Wallach Company then paid, about July, 1948.

The uniform rate, and the only rate that the Wabash was permitted by law to collect, was fixed at the time of delivery by the Kipp's Tariff No. 414–A. That tariff provided, among other things, that when material to be used for scrap was shipped in its original form, without having been broken into fragments, the scrap rate of freight would apply provided the shipper states on the bill of lading that the material is scrap iron or steel, describing it generally, and that it was bought as iron or steel scrap, and had no recognizable commercial use or value except for the recovery of its metal-ferrous content, and provided the consignee executes and delivers to the carrier a certificate of a similar nature, declaring that the material would be used or resold only for that purpose. The bills of lading presented by the Wabash on the shipments in question did not contain any of such certificates or representations.

In August, 1949, after the payment of the reduced freight bills, the Wabash began

to check its authority to forego the collection of the full rate required by the tariff. It engaged the Eastern Weighing Inspection Bureau in the matter, and on November 23, 1949, that bureau reported its information on the description of material shipped and forwarded the necessary signed certificates it had procured on 7 of the 18 cars. On November 28, 1949, Wabash requested of the Interstate Commerce Commission an informal opinion as to whether such certificates would be acceptable retroactively on the 7 cars. The Commission replied on January 26, 1950, that its informal opinion was that the failure to comply with the certificate requirements at the time of the shipments would preclude the application of the scrap rate.

On February 24, 1950, the Wabash presented bills to Berg for the additional amount required by the tariff for the machine rate, and also advised him of the Commission's informal opinion mentioned. Similar balance due bills were also sent by the Wabash to the Wallach Company and their payment was refused. In May, 1950, Wabash notified Berg of its intention to bring this suit unless he decided to pay the claims, and requested him to furnish the remaining consignee's certificates so that the Wabash might yet seek authority from the Commission to waive the undercharges. Berg thereafter furnished the necessary certificates and by January or February, 1951, all of the required certificates were obtained from the War Assets Administration. Meanwhile, on June 22, 1950, this suit was instituted. On October 3, 1951, the Wabash made application to the Interstate Commerce Commission for authority to waive the undercharge and the Commission, on January 29, 1952, ruled that the application was barred by the two year limitation provided in Section 16 of the Interstate Commerce Act, 49 U.S.C.A. § 16.

On September 10, 1951, while this suit was still pending, and other suits by railroads had been brought against one or both of the parties, Berg and the Wallach Company entered into an agreement on which Berg relies for indemnity. As provided therein, in view of the disputes between the parties "relative to said contracts" for war materials and whereas, Berg, on March 2, 1949, had received from the War Assets Administration a check for $6,787.99 as a refund for merchandise not delivered, and the check, by consent of the parties, had been since placed in escrow, awaiting settlement of their disputes, and whereas, it was the desire of the parties to settle "all disputes arising out of the contracts" described, it was agreed that Berg would indorse and deliver the check to the Wallach Company and would release the Wallach Company from all liability for profits made out of the contracts, from any responsibility whatsoever thereunto except such as assumed under the instant agreement; that the Wallach Company would release Berg from any losses or refunds arising out of the contracts and all claims whatsoever under said contracts. The Wallach Company further agreed, in consideration of the release of said check, to hold Berg harmless from the suits then pending against them, "and to pay any judgment, costs, expenses or any levy or damage that may result from any of said suits," and to reimburse him for any damage that might grow out of such litigation. The Wallach Company further agreed "to save the party of the first part (Berg) harmless against any litigation whatsoever that might be brought against him by virtue of any and all of the contracts hereinabove referred to, or by reason of any matters connected with or growing out of same, which contracts are made a part of this agreement."

In the pre-trial stipulation by the parties it was stated that Berg was not advised until September 23, 1949, that the certificates of the consignor and consignee were required in order to get the scrap freight rate. However, Richard Wallach testified that shortly after the original freight bills at the machine rate were presented, he

urged Berg to supply his certificates, but Berg refused, saying, "That is your baby." Wallach stated that he then personally went to Chicago to investigate the matter, but received no recognition since he was not the named purchaser.

Berg testified that the Wabash prepared or had prepared the certificates, presented them to the Interstate Commerce Commission, and that all he did was to sign them; that he was not informed of the informal adverse opinion of the Commission until 29 days thereafter and then by letter of the Wabash of February 24, 1950. There was no evidence that Berg personally took any steps directly to present his complaint of the charges to the Commission.

It was stipulated by court and counsel at the beginning of the trial that the hearing would be limited to the issues under the plaintiff's petition, the answers thereto, the issues made by the cross-claim of Berg in reference to the alleged indemnity agreement with the Wallach Company; and that if it appeared that an accounting be necessary, the court would appoint a referee to take an accounting and to report same to the court for final judgment on all issues. There was no evidence offered as to losses or profits in the third-party proceedings. The court determined, and the evidence indicated, that Richard Wallach was the sole owner of the Richard Wallach Metals & Supply Company, a corporation, and that his acts in the premises were intended to be for and in behalf of said corporation.

Berg's first and second points on this appeal are that (1) the Wabash voluntarily and gratuitously undertook and assumed Berg's duty to supply the necessary certificates required to obtain the scrap rate, and (2) is liable for having so negligently handled the matter as to permit the statutory limitation to bar the application for waiver of the additional charge. He contends that he had no actual knowledge of the certificate requirements of the tariff,

and that the Wabash did not advise him promptly of them, and later led him to understand that it was diligently looking after his duties in the premises. The law affords the shipper an opportunity to seek relief from a railroad for violation of the law, and from unreasonable, unjust or discriminatory charges. 49 U.S.C.A. §§ 13(1), 15(1).

■ In response to the theory of public policy urged and relied on by the Wabash against such defense, Berg, in his reply brief, argues the theory that his defense constitutes an independent cause of action and presents "a situation in which a counterclaim will lie whether or not specifically denominated as such," and also asserts his defense as in the nature of an equitable estoppel. At no place in his answer is a counterclaim pleaded as required by Section 509.050 RSMo 1949, V.A.M.S. It contained no prayer and stated no amount claimed. The answer prayed merely that he "be dismissed with costs." Fort Worth & D. C. R. Co. v. F. Burkart Mfg. Co., D.C.E.D.Mo., 56 F.Supp. 159, affirmed in 8 Cir., 149 F.2d 909. The mere absence of a prayer of a counterclaim otherwise sufficient is not a fatal defect, but the prayer at least conveys the intention of the pleader. Meisel v. Mueller, Mo.App., 261 S.W.2d 526. Nor was the defense so tried by court or counsel as to imply sufficient amendment to plead a counterclaim. In the case of Carr v. Maine Central Railroad, 78 N.H. 502, 102 A. 532, L.R.A.1918E, 389, cited by Berg on this point, the shipper was the plaintiff and alleged what he claimed was common law negligence of the railroad in voluntarily handling his claim for excess freight charges before the Interstate Commerce Commission, and plainly sought a judgment for his alleged damages. Finally, in the instant case, counsel for Berg, in his oral argument at the close of the testimony, said: "We have no counter-claim against the railroad. We have no claim at all. It doesn't arise until we have been forced to pay something to the railroad. Then we would have a claim

against the railroad. Our only procedure at this point is to defend, based on the negligence of the railroad in discharging the duty which it voluntarily undertook and I think it is a valid defense. * * *" The pleading must be considered a mere statement of defense to the plaintiff's petition.

We turn our attention next to Berg's theory of equitable estoppel as a defense to the petition of the Wabash. Berg, in his brief, admits that public policy forbids a variance from the uniform rates published in the tariff; that his ignorance of the law would be no excuse; that Kipp's Tariff 414–A was not complied with in the shipments in question; that retroactive compliance was not and is not permissible; that in the eyes of the law he was aware of the tariff and could be held responsible for it; that the Wabash was not legally obligated to inform him of the requirement of filing certificates. However, he cites numerous authorities to support the well established principle that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 41. He says that in the application to the Commission for waiver of the freight charges, the Wabash was his advocate, "a voluntary unpaid and self-moving advocate, but nevertheless Berg's advocate."

The distinction which the great weight of authority recognizes between the usual case of gratuitous assumption of another's duties and the collection of interstate freight rates by a railroad is that a railroad in its collection of such uniform published tariff freight charges is not serving only the parties to the shipments, but also the connecting carriers, itself and the general public. 49 U.S.C.A. § 6(7); Great Northern R. Co. v. Hyder, D.C., 279 F. 783, 786. Whatever exceptional authorities there may be to the contrary, the principle has been definitely determined in Missouri by our Supreme Court. In Mel-lon v. Stockton & Lampkin, 326 Mo. 129, 30 S.W.2d 974, the court quotes at page 975: "a carrier cannot by contract or otherwise, by estoppel or waiver, directly or indirectly, increase or decrease the duly established freight rates, and that the shipper must make good any deficiency not collected regardless of the cause." See opinion in same case on transfer, 225 Mo. App. 122, 35 S.W.2d 612.

Where a carrier agreed with the consignor to collect the interstate freight charge from the consignee and mistakenly billed and collected an amount less than the tariff provided, a judgment against the consignor was affirmed for the balance due, and it was held that the prior collection from the consignee did not estop the railroad in its action against the consignor for the undercharge. Chicago & E. R. Co. v. Lightfoot, 206 Mo.App. 436, 232 S.W. 176.

The court in Long Island R. Co. v. Midland Valley Lumber Co., 237 Mo.App. 147, 164 S.W.2d 930, 933, 934, quoted and followed the ruling of the court in Louisville & Nashville R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 442, 68 L.Ed. 900, as follows: " 'The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus they were fixed by law. No contract of the carrier could reduce the amount legally payable, or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor.' "

A ruling of the Supreme Court of Missouri in Baldwin v. Scott County Milling Co., 343 Mo. 915, 122 S.W.2d 890, that equitable considerations might affect the duty of the railroad to collect the tariff freight rates in an interstate shipment was

reversed by the United States Supreme Court in Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409.

■ Whether Berg should prevail as against the petition of the Wabash on the theory of a legal defense, equitable estoppel or by counterclaim, the net result would be to discharge his liability to pay and to relieve the Wabash from collecting the balance due on the lawful freight rate, and to do so by the joint failure on his part, and on the part of the railroad assisting him, to comply with its terms, which, as we have pointed out, is not permissible under the Interstate Commerce Act. The judgment of the trial court against Berg on the petition of the Wabash was correct.

■ Berg has also appealed from that part of the judgment against him as third-party plaintiff in favor of the Wallach Company, third-party defendant, for $1,014, on the latter's counterclaim for interest on the refund check for $6,787.99 received by Berg from the War Assets Administration, to cover shortage of materials delivered. Berg's appeal from this item, growing out of the third-party proceedings, requires a consideration of the agreement entered into by Berg and the Wallach Company on September 10, 1951. Berg pleaded and contends that under its terms the Wallach Company plainly agreed to indemnify him against the present claim and judgment of the Wabash against him for additional freight charges. The Wallach Company asserts that the agreement is void for want of a valid consideration; that Berg's surrender of the refund check was no more than his existing legal obligation; that it was never contemplated that the company would pay additional freight charges caused by Berg's refusal to cooperate in the lawful requirements to obtain a scrap rate of freight charge; that Berg breached his contract by such refusal to comply with such legal requirements.

■ The agreement between Berg and the Wallach Company referred to dated September 10, 1951, together with other evidence, discloses that this and certain other lawsuits by railroads were pending against the parties thereto; that under the purchase contracts the Wallach Company had agreed to pay the costs of processing and transportation of the material; that Berg was looked to by the Wabash to pay the full tariff rates; that he was claiming a share in profits which he insisted had been made by the Wallach Company on the transactions, and that the Wallach Company was claiming that losses had been incurred, and asserted the right to have the refund check which they had placed in escrow. We hold that under such facts and provisions the surrender of the check, in exchange for the releases of the respective claims against each other, and the indemnifying clauses, constituted a valid consideration for the agreement and was correctly so considered by the trial court. The judgment of the court in favor of Berg on his third-party petition against the Wallach Company was proper.

The court, however, ruled that Berg had wrongfully withheld the refund check from March 2, 1949, to September 10, 1951, and that interest on that item was not contemplated by the Wallach Company in its indemnity agreement, and gave judgment to the Wallach Company against Berg for interest in that amount for such period, namely $1,014. Berg asserts failure of proof and accord and satisfaction. We construe the agreement in question as having compromised and finally settled all pending disputes between the parties thereto relating to the purchase contracts in evidence or "growing out of the same." There was no evidence to authorize the exemption from the indemnity provisions of the agreement, the claim of the Wallach Company for accrued interest on the check. It is plainly stated in the agreement that the retention of said check was "in connection with said dispute" over the "purchase of war assets."

The judgment is reversed and the cause is remanded with directions to re-enter a judgment providing that the Wabash Railroad Company, plaintiff, shall have and recover of and from Sam Berg, defendant, the sum of $3,036.54 on its petition, together with its costs; that the issues are found in favor of Richard Wallach, third-party defendant on the third-party petition filed herein; that Sam Berg, third-party plaintiff, have and recover of and from the Richard Wallach Metals & Supply Company, third-party defendant, the sum of $3,036.54 on his third-party petition and that the issues are found in his favor on the counterclaim of that third-party defendant, and the said Sam Berg, third-party plaintiff, recover of and from the said Richard Wallach Metals & Supply Company, third-party defendant, all of the costs in the combined proceedings herein.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the court. Accordingly, the judgment is reversed and the cause remanded, with directions to re-enter a judgment providing that the Wabash Railroad Company, plaintiff, shall have and recover of and from Sam Berg, defendant, the sum of $3,036.54 on its petition, together with its costs; that the issues are found in favor of Richard Wallach, third-party defendant, on the third-party petition filed herein; that Sam Berg, third-party plaintiff, have and recover of and from the Richard Wallach Metals & Supply Company, third-party defendant, the sum of $3,036.54 on his third-party petition and that the issues are found in his favor on the counterclaim of that third-party defendant, and the said Sam Berg, third-party plaintiff, recover of and from the said Richard Wallach Metals & Supply Company, third-party defendant, all of the costs in the combined proceedings herein.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.