**LACLEDE GAS COMPANY, a corporation, Plaintiff-Respondent,**

v.

**SOLON GERSHMAN, INC., a corporation, Defendant-Appellant.**

No. 36817.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 25, 1976.

Motion for Rehearing or Transfer
Denied July 8, 1976.

Application to Transfer Denied
Sept. 13, 1976.

---

Gross & Goodman, Michael A. Gross, St. Louis, for defendant-appellant.

Paul B. Hunder, Jr., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Plaintiff, Laclede Gas Company, a gas utility, sued defendant, Solon Gershman, Inc., a real estate management corporation, for $5,709.59, a balance due for natural gas consumed by defendant between September 15, 1967 and October 18, 1971. To plaintiff's petition, defendant filed answer setting out a defense of estoppel and a counterclaim seeking damages because of plaintiff's negligence. Plaintiff's motion to dismiss the counterclaim on the basis that the counterclaim sought a special rebate contrary to the law was sustained by the court. The cause was then submitted to the court upon a stipulation of facts. Judgment was rendered against the defendant in the amount prayed for in the petition.

The facts disclose that between the dates mentioned in plaintiff's petition, plaintiff had sold to defendant gas used by defendant upon certain commercial premises in Clayton, Missouri, which comprised twenty-nine apartments and four commercial stores. The metering equipment installed by plaintiff at these premises was equipped with a 20 cubic foot internal drive. Instead of having a 20 cubic foot index on the face of the meter, plaintiff had installed a 10 cubic foot index which recorded only one-half of the total amount of gas actually consumed. Defendant had been billed for $6,513.78 during the time that this meter was in operation, leaving a balance actually due plaintiff of $5,709.59 after adjustments, according to the rate tariffs which were on file with the Missouri Public Service Commission. The agreed statement of facts contains this statement: "The erroneous billing * * * occurred solely as a result of plaintiff's error and defendant committed no act or made no omission contributing to the error. If defendant had received the correct billings, the rental rates charged to its tenants would have reflected the additional billing in its entirety and at this time defendant cannot go back and collect these sums."

Defendant contends that the circuit court erred in entering judgment for plaintiff since the plaintiff should have been estopped from asserting its claim because of its negligence in installing a defective meter. Plaintiff, on the other hand, counters

by stating that it was entitled to recover the difference between the amount erroneously billed and the correct amount which was owing it for gas used by the defendant because, as a public utility, it could not charge less than the rates established by law. To determine whether the court committed error in its judgment, we consider the special relationship of the parties under Missouri statutory and case law.

The Missouri Public Service Commission has jurisdiction over natural gas distribution companies. § 386.250(5), RSMo 1969. The Commission alone authorizes the rates charged by such utilities. *May Department Stores Co. v. Union Electric Light & Power Co.*, 341 Mo. 299, 107 S.W.2d 41, 57[18] (1937). The rates so authorized are "prima facie lawful and reasonable until found otherwise" in a special statutory action brought to determine invalidity. § 386.270, RSMo 1969; *State ex rel. Dyer v. Public Service Commission,* 341 S.W.2d 795, 799[3] (Mo.1961), *cert. den.,* 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384. § 393.130, RSMo 1969 provides in subsection (2) that: "No gas corporation * * * shall directly or indirectly by any special rate, rebate, drawback or other device or methods, charge, demand, collect or receive from any person or corporation a greater or less compensation for gas, * * * or for any service rendered or to be rendered in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect thereto under the same or substantially similar circumstances or conditions." Undue or unreasonable preference or advantage to any person or corporation or locality is forbidden in the next subsection.

■ No gas utility rate collection case in Missouri has been found by counsel or this court, but in *Mellon v. Stockton & Lampkin,* 326 Mo. 129, 30 S.W.2d 974 (1930) the court had before it the very issue which is here presented to us except that it involved an undercharge claim by a railroad against one of its shippers. There the court considered the application of § 10444, RSMo 1919 (now

§ 387.100, RSMo 1969) which contained a prohibition against unjust rate discrimination by carriers in substantially the same words as those contained in § 393.130 applicable to gas utilities. As stated in *Mellon* at p. 975[2]: "This statute has been construed by our courts on numerous occasions, and it appears to be the settled law of this state, 'that a carrier cannot, by contract or otherwise, *by estoppel or waiver,* directly or indirectly, increase or decrease the duly established freight rates, and that the shipper must make good any deficiency not collected regardless of the cause.'" (Emphasis added.) Because of lack of jurisdiction, the Supreme Court in *Mellon* transferred the case to the Kansas City Court of Appeals where the court directly held that the duty of a carrier to collect the total amount due under its tariff rates could not be defeated by estoppel. *Mellon v. Stockton & Lampkin,* 225 Mo.App. 122, 35 S.W.2d 612, 613[2] (1931). See also *May Department Stores Co. v. Union Electric Light & Power Co., supra,* 107 S.W.2d 41, where at p. 59 the court cited *Mellon* (Mo.) in support of the statement that estoppel could not be invoked to prevent recovery of unlawful overcharges. As pointed out in *Mellon* (Mo. App.), one of the chief evils which was sought to be remedied by the Public Service Act was the abolition and prevention of favoritism and discrimination. To permit the defense of estoppel would be merely another way of evading the provisions of the law prohibiting rate discrimination. In the case before us, the circuit court correctly ruled that estoppel was not a defense to plaintiff's action for a balance due on the gas consumed by defendant which was caused by installation of a defective meter.

We pass to the contention that the court should not have dismissed defendant's counterclaim against plaintiff for damages caused by the negligent installation of an improper index on the face of the meter which caused the underbilling and which in turn caused defendant to be placed in a position where it could not recover as a part of the rent the additional amount which it was compelled to pay for the gas used upon the premises. Obviously defendant here is

in a different position than a residential or non-commercial user. Like the manufacturer of a product, defendant had to consider the cost of utilities furnished to its customers, or tenants, when it determined the rental to be charged for the use of the rented premises because defendant paid the gas bill. Plaintiff, by joining in the stipulation of facts, admitted that the erroneous billing occurred solely as the result of its error and not by reason of any act or omission of the defendant. As to damages, it was further agreed that: "If defendant had received the correct billings, the rental rates charged to its tenants would have reflected the additional billing in its entirety and at this time defendant cannot go back and collect these sums." But here again we run into the harsh rule which has been established in the railroad cases that a consignor cannot plead a counterclaim no matter how meritorious his claim may be. *Bush v. Keystone Driller Co.,* 199 Mo.App. 152, 199 S.W. 597, 599 (1917). This was decided upon the reasoning that the court would be compelled to undertake the impossible task of holding the carrier to diligence and good faith in preparing and presenting its defenses in order to prevent the granting and receiving of rebates " 'by insidious agreement between the parties' " in regard to the disposition of the case. Although in *Bush* the question arose in connection with a counterclaim filed in a suit for unpaid freight charges on an interstate shipment and federal court decisions under the Interstate Commerce Act were used as authority to support the rule, in *St. Louis-San Francisco Ry. Co. v. Morgan,* 221 Mo.App. 43, 297 S.W. 717, 718[2] (1927) the same rule was applied to a counterclaim filed in an action by a carrier against a shipper for intrastate transportation charges. See also *Wabash Railroad Company v. Berg,* 318 S.W.2d 504, 508–510[1, 2] (Mo.App.1958) where defendant was prevented from asserting estoppel or a counterclaim against the railroad under the Interstate Commerce Act in a suit filed by the railroad for a rate charge deficiency.

The carrier cases, however, are based in part upon the reasoning that lawful tariffs are published and are available to the pub-

lic. The fact that a shipper is misled by an employee of the carrier cannot override the purpose of fixed rates which must be inflexibly adhered to in order to overcome rate preferences and other forms of discrimination. The shipper must be held to notice of the lawful rate in effect at the time of shipment. Here, there is no misrepresentation of a lawful rate by the gas company, or a billing based upon an unlawful rate. The negligent assembly and installation of an inaccurate meter by the gas company that recorded only half of the gas consumed caused the underbilling and the consequent damage to the defendant.

■ Although a utility company must be compensated for the full amount lawfully due it under the law and the rates fixed by the Public Service Commission, it "cannot divorce itself from the consequences of its own failure to use ordinary care to avoid harm to its consumers." *National Food Stores, Inc. v. Union Electric Co.,* 494 S.W.2d 379, 384[8] (Mo.App.1973). We have concluded that the plaintiff is entitled to collect the full deficiency due it. Since the underbilling occurred, however, not because of misrepresentation of a lawfully established rate which could also be correctly determined by inquiry on the part of the consumer, but rather because of the defective metering device which could not be detected by the consumer, the plaintiff should be held accountable for any damage caused to defendant.

Although the parties have agreed to the facts of negligence and that the amount of the underbilling is the damage to the defendant, in order to avoid any appearance of complicity which could give rise to a charge of discrimination, the procedure followed and approved in *Union Electric Co. v. Mansion House Center North Redevelopment Company,* 494 S.W.2d 309, 312[1] (Mo. 1973) should be followed here in that the counterclaim which must be filed under the compulsion of Rule 55.45(a) should be separately tried under Rule 66.02. The stipulation of facts should not be completely relied upon by the court in determining the dam-

ages arising from the acknowledged negligence of the plaintiff. A separate inquiry should be undertaken to determine the facts of negligence and the actual damage, if any, suffered by the defendant.

We finally consider a charge made by plaintiff that defendant failed to preserve its right to appeal from the action of the trial court in sustaining the motion to dismiss when it failed to file a notice of appeal within ten days after this ruling by the court. The ruling on the motion did not dispose of the plaintiff's suit and did not constitute a final appealable judgment. A judgment to be final and appealable is generally one that disposes of all parties and all issues. *Brown Supply Company v. J. C. Penney Company*, 505 S.W.2d 463, 466[1] (Mo.App.1974). If a separate trial of a counterclaim is had before a jury, judgment therein is final for purposes of appeal. But where the court tries claims arising out of the same transaction separately, the judgment entered on each is not final until the last one is entered or the court specifically designates it is final. Rule 81.06.

The judgment in favor of plaintiff and against defendant on plaintiff's cause of action is affirmed. The judgment dismissing defendant's counterclaim is reversed and remanded for trial on the counterclaim in accordance with the instructions herein contained. Costs are assessed equally against plaintiff and defendant.

McMILLIAN and RENDLEN, JJ., concur.