**MEMPHIS LIGHT, GAS & WATER DIVISION, A DIVISION OF THE CITY OF MEMPHIS, Plaintiff-Appellant,**

v.

**The AUBURNDALE SCHOOL SYSTEM, Defendant-Appellee.**

Supreme Court of Tennessee, at Knoxville.

Feb. 24, 1986.

Frierson M. Graves, Jr., Robert Mark Glover and Pete Greer, Memphis (Heiskell, Donelson, Bearman, Adams, Williams & Kirch, of counsel), for plaintiff-appellant.

Carlos C. Smith, Frederick L. Hitchcock and Edward D. Meyer, of Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, for amicus curiae, Tenn. Valley Public Power Assn.

Mimi Phillips White, Memphis, for defendant-appellee.

OPINION

HERSCHEL P. FRANKS, Special Justice.

The issue presented by this appeal is whether a customer is required to pay for all electricity consumed where the utility has, for a number of years, negligently under-billed the customer.

The circuit judge awarded the utility a judgment for $32,316.29. In a split decision, the Court of Appeals reversed, the majority holding the utility was equitably estopped from collecting all but the last six months of the under-billed charges.

The operative facts are not in dispute. In July, 1976, the customer commenced construction of a new building on its campus. Electric consumption in the building was measured by meter and the total electric consumption was to be determined by multiplying the kilowatt usage by a factor of 160; however, due to an error by the utility's billing department, the kilowatt consumption read from the meter was multiplied by a factor of 60 and the customer was billed accordingly.

---

The under-billing occurred monthly between July, 1976 and January, 1981, when the utility discovered the error and demanded payment for the under-billed amount. This case was filed when the customer refused to pay.

The utility insists the doctrine of equitable estoppel may not be invoked to defeat its claim.

While no reported cases in this jurisdiction have considered the issue, the overwhelming weight of authority from other jurisdictions holds that where a public utility negligently under-bills a customer for electricity consumed, the defense of equitable estoppel is not available to the customer to bar the utility from collecting for the electricity actually consumed. *See e.g., Chesapeake & Potomac Tel. Co. of Virginia v. Bles*, 218 Va. 1010, 243 S.E.2d 473 (1978); *Haverhill Gas Co. v. Findlen*, 357 Mass. 417, 258 N.E.2d 294 (1970); *Wisconsin Power & Light Co. v. Berlin Tanning & Mfg. Co.*, 275 Wis. 554, 83 N.W.2d 147 (1957); *Sigal v. City of Detroit*, 140 Mich.App. 39, 362 N.W.2d 886 (1985); *Corp. De Gestion Ste-Foy v. Florida Power & Light*, 385 So.2d 124 (Fla.App.1980); *Shoemaker v. Mtn. States Tel. & Tel. Co.*, 38 Colo.App. 321, 559 P.2d 721 (1976).

The customer relies heavily upon *Laclede Gas Co. v. Solon Gershman, Inc.*, 539 S.W.2d 574 (Mo.App.1976). In that case, the court held the estoppel defense would not apply and the utility could collect "the full deficiency due it." *Id.*, at 577. The court further held, however, that since the under-billing resulted from "a defective metering device which could not be detected by the consumer, the plaintiff should be held accountable for any damage caused to defendant." *Id.*

*Laclede* is consistent with collecting the full indebtedness. The Court of Appeals did not address the issue of the customer's damages but the trial court determined the counter-claim failed because the evidence on the issue of damages was too speculative to allow recovery. The evidence does not preponderate against the trial judge's determination.[1] T.R.A.P., Rule 13(d). In sum, *Laclede* required full payment for the electricity actually consumed but allowed a set-off for any damages actually caused the defendant. *Cf. Wisconsin Power & Light Co., supra.* ("We do not see any important difference between reducing the amount to be paid plaintiff by a defense of estoppel arising out of negligent billing and reducing the amount by setting off damages arising from negligent billing.") 83 N.W.2d at 151.

*Goddard v. Public Serv. Co. of Colorado*, 43 Colo.App. 77, 599 P.2d 278 (1979), is essentially similar to the instant case. In *Goddard*, a public gas company had installed an incorrect index dial on a gas meter. As a result, the meter registered only one-half of the gas actually consumed. The utility sued to recover the full amount for the fuel actually consumed and the customer interposed the doctrine of equitable estoppel as a defense, claiming "they had relied on the previous gas bills in making their determination to purchase the apartment building, had set their rentals accordingly, and could no longer collect the difference in higher heating costs from their tenants." *Id.*, at 279.

The court held that Colorado's public utilities statute forbade estoppel of a public utility "from collecting the established rate.... The Goddards had received the gas at half price contrary to the terms of the statute...."[2] The decision implicitly recognized that where a statute declares

1. Customer primarily based its damages on a decrease in the number of students allegedly due to an increase in tuition. The evidence established that only a very small fraction of the increase was based on utility costs and the general economy at the time was in a recessionary phase.

2. The statute relied upon by the court provided:

No public utility shall ... receive a greater or lesser or different compensation for any product ... than the rates ... applicable to such product ... as specified in its schedules on file ... nor shall any such public utility refund ... directly or indirectly, in any manner or by any device, any portion of the rates ... so specified....

that public utilities must charge all customers of public power alike according to a standard rate schedule, it is a contravention of public policy to estop the utility from collecting the full amount due for utilities consumed even where the customer has been negligently under-billed. *See West Penn. Power Co. v. Nationwide Mutual Ins. Co.*, 209 Pa.Super. 509, 228 A.2d 218 (1967).

In almost unanimity, other jurisdictions have applied this analysis to preclude the assertion of an estoppel defense against a public utility. *See e.g., Bles, supra.* In applying these principles to the instant case, the issue thus becomes whether public policy precludes discrimination among utility rate payers so that any device tending to favor one consumer over another is prohibited.

While municipal utilities are specifically exempted from the statutes regulating public utilities, T.C.A., § 65–4–101(2), several sections of the code prohibit public utilities from creating preferences in rate making or discriminating among users of like utility services. *See e.g.,* T.C.A., § 65–5–204(a)(1) and (2). These statutes are consistent with the policy expressed in the federal statute creating the Tennessee Valley Authority. The pertinent provision from that Act provides:

> [A]ll contracts entered into between the Corporation and any municipality or other political subdivision or cooperative organization shall provide that the electric power shall be sold and distributed to the ultimate consumer without discrimination as between consumers of the same class, and such contract shall be voidable at the election of the board if a discriminatory rate, rebate, or other special concession is made or given to any consumer or user by the municipality or other political subdivision or cooperative organization.... 16 U.S.C.A., § 831k.

An anti-discriminatory clause conforming to this statute was included in the contract between the utility and the Tennessee Valley Authority, the supplier of electricity.

The statute evinces a general public policy that all consumers of electrical power supplied by TVA to municipal utilities must pay for electric power actually consumed at the same rate, and no customer may in any manner be accorded a preference. In this respect, the federal statute governing the sale of power to municipalities mirrors those of the several states which have barred equitable estoppel and other defenses to undercharging complaints on public policy grounds.

In this jurisdiction, the doctrine of estoppel generally does not apply to the acts of public authorities, *Haymon v. City of Chattanooga*, 513 S.W.2d 185 (Tenn.App. 1973); however, estoppel arising from "laches and acquiescence" may, under certain conditions, apply to a public entity. *Putnam County v. Smith County*, 129 Tenn. 394, 164 S.W. 1147 (1913).

Where public policy in a given area is evident, however, the equitable defense of estoppel cannot be invoked to thwart or contravene that policy. As was noted in *State v. Williams*, 207 Tenn. 695, 343 S.W.2d 857 (1961), "estoppel *in pais* cannot be invoked as against the public interest, nor to defeat the police power." *Id.*, at 705, 343 S.W.2d 857. *Also see* 31 C.J.S., *Estoppel*, § 138(a).

The policy that all consumers of publicly provided utilities must pay for what they receive at the same rate charged others for a like service is paramount to any equitable considerations advanced by the customer. If the customer could successfully assert an estoppel defense, it would, in effect, have received electrical service at a rate far below that charged other users of like services. Besides unjustly enriching the customer, the result would amount to granting it a rate preference of a type proscribed by the TVA Act.

For the reasons stated, the judgment of the Court of Appeals is reversed and that of the trial court reinstated. The cause will be remanded to the trial court with the cost incurred on appeal assessed to appellee.

BROCK, Jr., C.J., and COOPER and HARBISON, JJ., and BYERS, Special Judge, concur.